UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
CHARLES PONA,                       )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )    C.A. No. 16-612 WES
                                    )
ASSISTANT DIRECTOR JAMES WEEDEN,    )
et al.,                             )
                                    )
         Defendants.                )
_____)

**ORDER**

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") on February 26, 2018 (ECF No. 33) recommending that the Court grant with prejudice Defendants' Motion To Dismiss (ECF No. 23) Plaintiff's Amended Complaint (ECF No. 22). Plaintiff has not objected to the R&R. After carefully reviewing the R&R and the parties' submissions, the Court ACCEPTS the R&R in its entirety and adopts the reasoning and recommendations presented therein. Accordingly, Defendant's Motion To Dismiss (ECF No. 23) is GRANTED with prejudice.

IT IS SO ORDERED.

/s/ William E. Smith

William E. Smith
Chief Judge
Date: March 21, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES PONA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-612WES |
| | : | |
| ASSISTANT DIRECTOR JAMES | : | |
| WEEDEN, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

*Pro se* plaintiff Charles Pona, a prisoner at Rhode Island's Adult Correctional Institutions ("ACI"), operated by the Rhode Island Department of Corrections ("RIDOC"), has filed an amended complaint (ECF No. 22) by which he seeks to cure the deficiencies that resulted in the Court's dismissal in its entirety of his original complaint (ECF No. 1). Pona v. Weeden, No. 16-612S, 2017 WL 3279012, at *9 (D.R.I. June 29, 2017), adopted, 2017 WL 3278874, at *1 (D.R.I. Aug. 1, 2017) (hereinafter "Pona I"). In the amended complaint, Plaintiff again challenges the constitutionality under the First, Eighth and Fourteenth Amendments of segregation imposed on him for orchestrating a narcotics trafficking operation at the ACI. This time, he asks the Court to consider the time he spent in administrative segregation while the narcotics trafficking was being investigated and the time he spent in administrative segregation after the disciplinary segregation term of one year, as reduced,[1] was completed. ECF No. 22 ¶¶ 13-14, 27-28, 30. When both periods of administrative segregation are added to the period of less than a year in disciplinary segregation, it amounts to a total period in close confinement of

---

[1] The amended complaint alleges that the disciplinary segregation began on June 3, 2014, and ended on April 24, 2015, a total of almost eleven months. ECF No. 22 ¶¶ 17, 20, 28. This is materially longer than the seven and a half months he claimed in his original complaint. Pona I, at *2 n.5.

twenty and a half months. ECF No. 22 ¶ 31. The amended complaint alleges that this protracted period is sufficient to trigger a liberty interest, implicating Plaintiff's due process rights under the Fourteenth Amendment, as well as that the process afforded was constitutionally insufficient. ECF No. 22 ¶ 41. He also claims that twenty and a half months in disciplinary and administrative confinement without newspapers, personal books or photographs violates his rights under the First Amendment, as well as that the deprivation of outdoor exercise for such a long period amounts to cruel and unusual punishment in violation of the Eighth Amendment. ECF No. 22 ¶¶ 39-40.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants[2] again have moved to dismiss (ECF No. 23), arguing that the new allegations remain insufficient to nudge Plaintiff's claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). However, instead of filing a timely opposition, Plaintiff responded with a flurry of filings asking the Court to order RIDOC to adopt the protocol of providing ACI inmates with paper copies of all cases cited in any filing that are not otherwise readily accessible, including those cited both in RIDOC briefs and in Court orders and opinions, as well as to extend his time to object to the motion to dismiss until after he had been provided with the requested copies of cases. ECF Nos. 25, 27, 28, 29. Initially, the motion for an extension was granted so that the motion for copies of cases, which mirrored a similar request made in other cases by other ACI inmates, could be resolved in an orderly way. Text Order of October 11, 2017. After more than two months passed without resolution of the copies-of-cases issue, to move this case forward, the Court entered an Order "with no precedential impact on further proceedings in this case or in any other

---

[2] Defendants are six RIDOC officials: Assistant Director James Weeden, Warden Matthew Kettle, Deputy Warden Jeffrey Aceto, Lieutenant Bruce Oden, and Special Investigators Nuno Figueredo and David Perry. They are all sued in their individual capacities for nominal, punitive and compensatory damages and in their official capacities for injunctive relief. ECF No. 22 ¶¶ 4-9, 43-49.

case and without addressing the substance of Plaintiff's argument regarding entitlement to copies of cases," directing RIDOC to supply Plaintiff with copies of the requested cases. Text Order of Jan. 18, 2018. The Order further directed Plaintiff to file his opposition to the motion to dismiss on or before February 9, 2018.

As of this writing, Plaintiff has filed nothing. After affording Plaintiff two extra weeks, this report and recommendation is issuing today. In it, I find that the amended complaint still fails to state a claim and now recommend that the case be dismissed with prejudice.

I. BACKGROUND[3]

In setting out the pertinent background, the reader's familiarity with Pona I is assumed. Briefly, Plaintiff is serving two consecutive life sentences for the 1999 murder of seventeen-year-old Hector Feliciano and the 2000 murder of fifteen-year-old Jennifer Rivera; the latter was shot while skipping rope because she was about to testify against Plaintiff during his trial for the Feliciano murder. State v. Pona, 66 A.3d 454 (R.I. 2013); State v. Pona, 948 A.2d 941 (R.I. 2008); State v. Pona, 926 A.2d 592 (R.I. 2007). This case arises from a disciplinary proceeding against Plaintiff for the infraction of narcotics trafficking committed while he was housed with the general population in the "MAX" area of the ACI. ECF No. 22 ¶¶ 13, 15.

The amended complaint alleges that, on April 16, 2014, Plaintiff was abruptly transferred from "MAX general population" to the High Security Center ("HSC"), where he was placed on administrative segregation status. ECF No. 22 ¶ 13. On May 28, 2014, he was returned to MAX, but remained on administrative segregation. ECF No. 22 ¶ 14. On May 30, 2014, he was given written notice that he was being charged with narcotics trafficking. ECF No. 22 ¶ 15. At

---

[3] The facts that follow are derived from the allegations in the amended complaint (ECF No. 22), as well as from the background in published decisions concerning Plaintiff's underlying criminal cases, State v. Pona, 66 A.3d 454 (R.I. 2013); State v. Pona, 948 A.2d 941 (R.I. 2008); State v. Pona, 926 A.2d 592 (R.I. 2007).

3

the hearing that followed on June 3, 2014, Plaintiff pled not guilty; in response to his request to see any evidence against him, the hearing officer told Plaintiff that there was no requirement to disclose any evidence and none was ever provided. ECF No. 22 ¶¶ 16-18. Instead, the hearing officer told Plaintiff that he was found guilty as charged "based solely on the report of [the investigator]," about which Plaintiff was not told anything. ECF No. 22 ¶ 19. "Without any evidence whatsoever," the hearing officer found Plaintiff guilty of "Narcotics Trafficking," and sanctioned him to one year of disciplinary segregation, with one year lost good time credit; while the amended complaint is not explicit, the facts permit the inference that the sanction began immediately. ECF No. 22 ¶ 20. In addition, Plaintiff alleges that a recommendation was made to "downgrade" him to HSC status. Id.

Plaintiff appealed immediately, resulting in a second hearing on June 12, 2014. ECF No. 22 ¶¶ 21-23. Again, Plaintiff pled not guilty and asked to see the evidence; again his request was denied. Instead, the hearing officer again found him guilty "without any evidence whatsoever being presented," "nor was he informed of when, where, what alleged drugs he was charged with trafficking." ECF No. 22 ¶ 23. The hearing officer imposed the same sanctions, as well as the additional consecutive sanction of no visits for 365 days. ECF No. 22 ¶ 23. A second appeal was denied on June 24, 2014. ECF No. 22 ¶ 24. Consistent with RIDOC policy, Defendant Kettle reviewed Plaintiff's sanctions and upheld them in a decision dated July 18, 2014. ECF No. 22 ¶ 25. Plaintiff wrote a final appeal letter, "professing his innocence," which was denied on August 5, 2014. ECF No. 22 ¶ 26.

Plaintiff remained in disciplinary segregation in MAX from June 3, 2014, until January 14, 2015, when he was transferred to disciplinary segregation in HSC. ECF No. 22 ¶ 27. Disciplinary segregation ended on April 24, 2015. ECF No. 22 ¶ 28. Plaintiff was then

4

transferred to administrative segregation in HSC, where he remained until he was transferred back to MAX general population on December 31, 2015. ECF No. 22 ¶ 30. The amended complaint permits the inference that Plaintiff's placement in HSC was based on the recommendation referenced in paragraph 20 of the amended complaint, which, in turn, is linked to the finding that he was guilty of narcotics trafficking. ECF No. 22 ¶¶ 20, 28, 30.

While in disciplinary segregation, Plaintiff was required to remain in his cell for almost twenty-four hours a day, including to eat all meals in his cell, with only a half-hour of indoor recreation and a fifteen-minute shower every weekday and no recreation or showers on weekends. ECF No. 22 ¶ 33. He was not allowed any visits or phone calls; he was not allowed to keep in his cell personal books and photographs, newspapers, magazines, television, radio, or MP3 player; he was limited to in-door recreation; he was barred from employment; he was not allowed to participate in any group activities such as sports or religious services; he was denied commissary privileges; and he was barred from access to educational, vocational and rehabilitation programs, the gym and the law library. ECF No. 22 ¶ 34. Conditions in administrative segregation were less restrictive. ECF No. 22 ¶ 35. Plaintiff was permitted one short phone call per month and two hours a week in the law library; he was allowed to listen to his radio; and he could order snacks through the commissary. Id. The amended complaint contrasts these extremely restrictive conditions to the many privileges Plaintiff enjoyed while he was in MAX general population. ECF No. 22 ¶ 32. However, the amended complaint does not compare the conditions of administrative confinement imposed on Plaintiff to typical conditions of confinement at HSC, which is RIDOC's most secure facility.

The amended complaint concludes that spending twenty and a half months in a combination of disciplinary and administrative segregation deprived Plaintiff of environmental

5

and sensory stimuli and almost all human interaction, which has caused him to suffer "severe depression, anxiety, lethargy, paranoia, weight loss, and developed ongoing anti-social issues." ECF No. 22 ¶ 37. He claims that these deprivations have constitutional implications in that the restriction on personal books and photographs, magazines and newspapers is a violation of his First Amendment rights; that the extended prohibition on outdoor recreation is a violation of his Eighth Amendment right against cruel and unusual punishment; and that the imposition of these punishments without a fair hearing at which he was permitted to see the evidence is a violation of his due process rights under the Fourteenth Amendment. U.S. Const. amend. I, VIII, XIV; ECF No. 22 ¶¶ 39-41.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint must allege a plausible entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 559. The plausibility inquiry requires the Court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). The complaint should not be read "too mechanically"; rather, it should be considered holistically with a heavy dose of common sense. Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014). "The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, and review pleadings of a *pro se* plaintiff liberally." Tucker v. Wall, No. 07-406 ML, 2010 WL

322155, at *8 (D.R.I. Jan. 27, 2010). The *pro se* litigant is held to a less stringent standard than one drafted by a lawyer and is to be read with an extra degree of solicitude. Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991). Nevertheless, even a *pro se* plaintiff's facts must possess enough heft to show that he is entitled to relief. Twombly, 550 U.S. at 557.

In performing a Fed. R. Civ. P. 12(b)(6) post-amendment inquiry, the court's analysis must focus only on the facts alleged in the amended complaint. Because the amended complaint supersedes the original complaint, facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader. InterGen N.V. v. Grina, 344 F.3d 134, 144-45 (1st Cir. 2003); see McNeal v. Cook Cty. Sheriff's Dep't, 282 F. Supp. 2d 865, 867 (N.D. Ill. 2003) ("It is well-established that an amended complaint supersedes an original complaint, and facts or admissions from the original complaint not incorporated into the amended complaint cannot be considered on a motion to dismiss."). That is not to say that statements made in a superseded complaint are null and void for all purposes. InterGen N.V., 344 F.3d at 144-45. To the contrary, the facts in the original complaint remain as potential party admissions, usable, for example, at summary judgment, despite the subsequent amendment. See Wiseman v. Reposa, 463 F.2d 226, 227 (1st Cir. 1972). The superseded material amounts to a statement once seriously made by the litigant, and, as such, it is competent evidence of the facts stated, like any other extrajudicial admission made by a party. Raulie v. United States, 400 F.2d 487, 526 (10th Cir. 1968). However, for present purposes, the Court must disregard the far richer factual background laid out in Plaintiff's attachments to his original complaint.

Plaintiff's failure to file any objection to Defendants' motion to dismiss does not mean that the motion should be summarily granted because it is not opposed by well-developed legal

7

arguments. Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("If the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim."). Rather, the Court must perform a substantive analysis to determine whether or not the complaint states a legally sufficient claim. That analysis follows.

## III. ANALYSIS

### A. *Due Process – Fourteenth Amendment*

Plaintiff's claim that he was deprived of due process when he was sanctioned based on "no evidence whatsoever" derives from the Supreme Court's watershed decision in Sandin v. Conner, which holds the due process clause is implicated only when prison officials impose a punishment that is "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484-86 (1995). Otherwise, an inmate does not have a due process right to remain in a prison's general population. Id. at 483 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated.")). Sandin holds that punishment that "falls within the expected perimeters of the sentence imposed by a court of law," does not implicate a liberty interest and due process rights do not accrue. 515 U.S. at 484. "Only changes in prison conditions resulting from discipline imposed without appropriate due process that constitute 'atypical' and 'significant' hardships sufficient to give rise to the loss of a liberty interest are potentially actionable under § 1983." Goddard v. Oden, No. 15-055ML, 2015 WL 1424363, *2 (D.R.I. Mar. 27, 2015).

8

This Court has already found that Plaintiff's placement in disciplinary segregation for less than one year[4] as a sanction for narcotics trafficking inside the ACI, imposed following a hearing (and multiple appeals) on an inmate serving two life sentences, is not sufficiently "atypical" plausibly to implicate a liberty interest. Pona I, at *6 (citing, e.g., Harris v. Perry, No. 15-222ML, 2015 WL 4879042, at *6 (D.R.I. July 15, 2015) (plaintiff must plead more than placement in disciplinary segregation for 365 days as sanction for narcotics trafficking)). While a closer call, I do not find that the analysis in the Court's intervening decision in DuPonte v. Wall would alter the result. No. 17-397-JJM-LDA, 2018 WL 502742, *5 (D.R.I. Jan. 22, 2018), (holding that liberty interest is established by imposition of one year of disciplinary confinement under conditions materially different from those imposed in non-disciplinary settings such as administrative segregation or general population, coupled with specific allegations concerning plaintiff's efforts to establish innocence, including his attempts to collect and introduce evidence). Nor does the expansion of Plaintiff's disciplinary confinement from the seven and a half months alleged in the original complaint to the ten and a half months alleged in the amended complaint require a different outcome. Plaintiff's due process claim based on disciplinary confinement should again be dismissed.

Similarly, Pona I also resolves Plaintiff's due process challenge to the period of administrative segregation in HSC and very briefly in MAX (from April 16, 2014, until June 3, 2014), before he was found guilty of narcotics trafficking and switched to disciplinary

---

[4] While the Eighth Amendment analysis of Plaintiff's claims is materially changed by the increase in the duration of segregation from the original complaint (seven and a half months) to the amended complaint (twenty and a half months), see infra, the impact of the amended pleading on the due process analysis is not so simple. The imposition of each phase of segregation – both disciplinary and administrative – was the product of a separate determination, each triggering a separate analysis of whether the deprivation implicated a liberty interest and, if it did, whether constitutionally sufficient due process was afforded. Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (disciplinary segregation analyzed separately from administrative segregation); Toevs v.Reid, No. 06-cv-01620-CBS-KMT, 2009 WL 598258, *8 (D. Colo. Mar. 6, 2009) (periodic review provides separate due process analysis for each classification).

segregation. Pona I, at *5. In addition to the limited period of time in administrative segregation during this initial term (forty-eight days), Plaintiff's amended complaint acknowledges that the conditions of administrative confinement were less restrictive than punitive segregation; moreover, he does not allege that there was a material difference between the conditions under which he was held and those imposed on other HSC inmates. See Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (no liberty interest implicated by placement of death row inmate in special cell without television after one month in punitive segregation; while twenty-six months in segregated cell was substantial, conditions not materially different from other death row inmates and less restrictive than those imposed on prisoners placed for punitive reasons); Davis v. Spencer, No. 515-cv-00105 KGB-PSH, 2017 WL 1156741, at *5 (E.D. Ark. Mar. 28, 2017) (administrative segregation for approximately twenty-two months with almost no contact with other inmates, only five hours per week of recreation and meals in cell, insufficient to implicate liberty interest). Further, there is no constitutional violation when a prisoner suspected of a serious infraction is isolated without a hearing while an investigation is conducted. Skinner v. Cunningham, 430 F.3d 483, 486-87 (1st Cir. 2005) ("Due process, even where it is due, does not invariably mean process before the fact"; no liberty interest implicated when segregation is rational, its duration not excessive, and its central condition – isolation from other prisoners – is essential to its purpose). Based on the foregoing, I find that Plaintiff's claim of an actionable denial of due process arising from his placement in administrative segregation for forty-eight days before the hearing on the charge of narcotics trafficking should again be dismissed for failure to state a claim. Morgan v. Wall, No. 10-241S, 2010 WL 3767691, at *3 (D.R.I. Aug. 31, 2010) (due process clause does not "afford a prisoner a liberty interest in avoiding transfer to more adverse conditions or confinement"); Briggs v. Wall, No. 09-456S,

2009 WL 4884529, at *4 (D.R.I. Dec. 16, 2009) (claim based on HSC classification dismissed; no violation of procedural due process for "placing him in the High Security Center without classification board hearing"); cf. Sandifer v. Tanner, No. 14-1670, 2015 WL 4168172, at *4 (E.D. La. July 1, 2015) (dismissing due process claim as frivolous; "[t]he Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement").

On the other hand, Plaintiff's new allegation – based on his claim that, as recommended during his hearing, ECF No. 22 ¶ 20, he was placed in HSC administrative segregation after he completed the term in disciplinary segregation – requires a fresh look. This analysis is guided by the well-settled proposition that the transfer of a prisoner to a more restrictive facility does not implicate the due process clause except in extraordinary circumstances not alleged by Plaintiff. Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005) (liberty interest implicated by classification to high security facility only because it not only barred almost all human contact, but also was of indefinite duration and disqualified otherwise eligible inmate for parole consideration); 72 C.J.S. Prisons § 24 "Segregation and solitary confinement" (2018) ("Absent extraordinary circumstances, administrative segregation as such, being incident to ordinary life as a prisoner, will not be a ground for a constitutional claim."). As alleged, the total time in HSC administrative segregation was a little over eight months. ECF No. 22 ¶¶ 28, 30. While Plaintiff describes the conditions as less restrictive than punitive segregation and does not address how they compare to the "general population" conditions at HSC, nevertheless, they unquestionably amount to solitary confinement in that human contact is extremely restricted, exercise is limited and outdoor exercise prohibited. ECF No. 22 ¶ 35. Yet Plaintiff does not plead that he endured conditions analogous to what Wilkinson holds are needed to give rise to a right to due process in

11

connection with placement in a highly restrictive facility. 545 U.S. at 223-24 (due process required when administrative segregation not only amounts to solitary confinement but also is indefinite and strips inmate of right to seek parole); Isby v. Brown, 856 F.3d 508, 512, 526-27 (7th Cir. 2017) (over "ten years and counting" in administrative segregation implicates liberty interest and triggers right to due process). Guided by Wilkinson, I find that Plaintiff's eight months in HSC does not meet the Sandin standard of "atypicality" so as to trigger a liberty interest.

In any event, if the Court were to assume that Plaintiff should have been afforded due process in connection with the placement in HSC administrative segregation, the inquiry must then return to Plaintiff's amended complaint; it alleges that the recommendation of the HSC downgrade came out of the hearing prior to which he received a written notice of the charge, at which he was allowed to plead not guilty, and following which he was afforded three opportunities to appeal in writing. ECF No. 22 ¶¶ 15, 17, 21-26. Thus, on the face of the amended complaint, Plaintiff was afforded the minimal process required by Wilkinson. 545 U.S. 228-29 (due process requires informal, non-adversary procedures, amounting to notice of charge and opportunity to rebut).

Based on the foregoing, I recommend that Plaintiff's claim that he was denied due process in violation of his Fourteenth Amendment rights be dismissed.

### B. *Books and Magazines – First Amendment*

Plaintiff claims that Defendants violated his First Amendment rights by "prohibiting him from receiving and/or possessing any magazines, newspapers, or personal books and photographs" while in administrative and punitive segregation, although he was allowed to have a radio and go to the law library while in administrative segregation. ECF No. 22 ¶¶ 34-35, 39.

Although the amended complaint increased the duration of time during which Plaintiff was deprived of personal books, magazines and newspapers since the Court dismissed this claim as articulated in the original complaint, the substantive analysis remains unchanged. The Supreme Court has consistently held that whatever rights an inmate may have to possess books or other reading materials may be restricted in order to achieve a "legitimate penological interest," Turner v. Safley, 482 U.S. 78, 89 (1987), such as "providing increased incentives for better prison behavior." Beard v. Banks, 548 U.S. 521, 530 (2006); see also Jones v. Salt Lake Cty., 503 F.3d 1147, 1153 (10th Cir. 2007). Restrictions on reading materials may be extended to include newspapers, magazines and other written materials. Hanson v. N.H. State Prison Literary Review Comm., No. 14-cv-132-SM, 2016 WL 4775529, at *6 (D.N.H. Aug. 17, 2016), adopted, 2016 WL 4768792 (D.N.H. Sept. 12, 2016). Punishment of Plaintiff for his role in narcotics trafficking at the ACI amounts to a sufficient "penological interest" to justify the restrictions on reading materials.

Based on the foregoing, I find that Plaintiff's allegation based on the denial of access to certain types of reading material and pictures while he was in segregation still fails to state a claim because the complaint does not plausibly describe how the limitation went beyond what is reasonably related to legitimate correctional goals, including the goal of deterring bad behavior. Beard, 548 U.S. at 530-33. Accordingly, I find that the complaint fails to state a viable claim that the restriction on reading materials and photographs violated the First Amendment. Based on that finding, I recommend that all such claims be dismissed. See Pona I, at *7.

### C. *Outdoor Recreation – Eighth Amendment*

To properly analyze Plaintiff's claim that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment when they refused to provide him with an

13

opportunity for outdoor recreation, the Court must now consider that he endured this restriction over the entire period of twenty and a half months while he was in both administrative and punitive segregation.[5] Unlike the original complaint, which was analyzed based on the inference that no out-of-cell exercise was allowed, the amended complaint clarifies that, during the twenty-and-a-half-month period, Plaintiff was "provided with 30 minutes of indoor recreation in a small area," but was completely prohibited from ever exercising outdoors. ECF No. 22 ¶¶ 33, 40. The amended complaint does not claim that Plaintiff has suffered any ill effects specifically resulting from the lack of outdoor (as opposed to any) exercise. Nor does it allege that any of Defendants were aware that Plaintiff was suffering due to the lack of outdoor exercise and were deliberately indifferent to his plight.

In Pona I, the Court dismissed Plaintiff's Eighth Amendment claim based on the lack of exercise by focusing on the relatively short period of time Plaintiff then alleged he spent in disciplinary segregation. Pona I, at *9. With the duration of the deprivation now materially longer, this issue merits a careful second look.

To state a claim under the Eighth Amendment, a prisoner must plausibly allege that he faced cruel and unusual conditions of confinement and that the prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294, 303 (1991). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" DuPonte, 2018 WL 502742, at *6 (quoting Rhodes v.

---

[5] Plaintiff makes inconsistent claims about the duration of the deprivation of outdoor exercise. On one hand, he states that he was not permitted to exercise outdoors while in punitive segregation, and that there is no change when he switched to administrative segregation. In a different paragraph, he alleges that he was deprived of "outdoor recreation for 12 months." ECF No. 22 ¶¶ 33, 35, 40. For purposes of this analysis, the Court has used the longer period.

14

Chapman, 452 U.S. 337, 346, (1981)). Deliberate indifference requires that "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).

Focusing first on the objective prong of the Eighth Amendment, courts often recognize that a long-term deprivation of any opportunity for exercise may implicate a constitutional right, Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), but they are less likely to consider the lack of outdoor exercise to be independently actionable. Apodaca v. Raemisch, 864 F.3d 1071, 1077 (10th Cir. 2017) (while "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates . . . we also have made clear that a denial of outdoor exercise does not per se violate the Eighth Amendment"); Graham v. Grondolsky, No. 08-40208-MBB, 2012 WL 405459, at *13 (D. Mass. Feb. 7, 2012) ("[T]he constitution does not compel prisons to provide inmates with outdoor exercise."). Some circuit courts disagree; for example, in the Ninth Circuit, it has long been settled that "deprivation of outdoor exercise *could* constitute cruel and unusual punishment." Tarabochia v. Clatsop Ct.y Or., 646 F. App'x 535, 537 (9th Cir. 2016) (lack of outdoor exercise for eight months) (emphasis in original). Where courts determine that the Eighth Amendment may be implicated, the duration of the deprivation seems pivotal. As the Tenth Circuit held in Ajaj v. United States, denial of outdoor exercise for a year is not sufficiently serious to implicate the Eighth Amendment, but three years probably is. 293 F. App'x 575, 584 (10th Cir. 2008).

Assuming without deciding that twenty and a half months without ever going outdoors may be cruel and unusual punishment, I nevertheless conclude that Plaintiff's Eighth Amendment claim based on the lack of outdoor exercise fails because he has not plead any facts permitting the inference that the prison officials were deliberately indifferent to a substantial risk

of serious harm.  This deficit is reinforced by the dearth of allegations that Plaintiff himself is aware of injury linked to the lack of outdoor exercise.  That the need for outdoor exercise has not morphed into the mainstream consciousness, based on "evolving standards of decency," is also confirmed by the many courts that have assumed that the long-term deprivation of outdoor exercise may be a constitutional violation, yet do not conclude that it is clearly established, so that prison officials are entitled to qualified immunity.  See Lowe v. Raemisch, 864 F.3d 1205, 1208 (10th Cir. 2017) (prison officials entitled to qualified immunity for depriving inmate of outdoor exercise for two years and one month); Carter v. Yarborough, 465 F. App'x 605, 606 (9th Cir. 2012) (same; during prison lock-down); Thomas v. Ramos, 130 F.3d 754, 762 (7th Cir. 1997) (same; seventy days).  Because the amended complaint lacks any facts plausibly permitting the inference that Defendants were aware that it was cruel and unusual punishment to deprive Plaintiff of outdoor exercise for twenty and a half months, but were deliberately indifferent to "a substantial risk of serious harm," Duponte, 2018 WL 502742, at *7, I recommend that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim be granted.

## IV.   CONCLUSION

Based on the foregoing, I recommend that Defendants' motion to dismiss (ECF No. 23) be GRANTED.  As Plaintiff has already been afforded an opportunity to amend his complaint, I further recommend that this case be dismissed with prejudice.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United

16

States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 26, 2018